UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AUDLEY WATSON | : | PRISONER |
| *Plaintiff,* | : | NO. 3:02CV600(PCD)(JGM) |
| | : | |
| VS. | : | |
| | : | |
| WARDEN GOMEZ, ET AL. | : | |
| *Defendant.* | : | November 5, 2003 |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the defendants in the above-captioned matter respectfully move to dismiss portions of this matter for the following reasons. First and foremost, this action fails to state a claim for deliberate indifference in a medical context. Second, this action fails to state a claim upon which relief can be granted insofar as it alleges destruction or concealment of records as against the defendants Ladden, McGuinness, and Taylor, which is not a cognizable cause of action. This action is also subject to dismissal pursuant to the Prison Litigation Reform Act for failure to sufficiently exhaust administrative remedies as to any claim other than the allegedly deficient medical care. For example, no grievance is alleged to have been filed as to the alleged destruction of records, the filing of the URC request by the defendant Dr. Pederson, or the defendant Warden's only alleged misconduct which is allowing the defendants Ladden, McGuinness and Taylor to continue in their employment. Also, this action fails to allege sufficient personal involvement on the part of former Warden Gomez, Chief Medical Supervisor Ladden, or records clerks McGuinness or Taylor. This action is subject to dismissal as to the defendant Ladden for failure to perfect service with regard to her. Finally, all defendants are entitled to qualified immunity in this action.

### I.     FACTS

The plaintiff in this action seeks monetary damages from the defendants in their individual capacities. He brings this action against former Warden of Garner Correctional Institution (hereinafter "Garner"), as well as Rebecca Ladden, described as "Chief Medical Supervisor/Garner C.I.". The plaintiff has not successfully served the defendant Ladden. He also sues Dr. Dennis Pederson, whom he describes as a dentist who provided him dental care at Garner, as well as Dental Assistant Carol Lucid. Comp. ¶¶ 4-5. He also seeks damages as against two records clerks at Garner, McGuinness and Taylor.

The plaintiff alleges that while incarcerated at Garner, he had an infection in his gums. The plaintiff claims that on July 10, 2001, the defendant Pederson "called the plaintiff to his office, looked in the plaintiff's mouth and informed the plaintiff that teeth 25 and 26 have 'Periodontal abscess and yellow exudate'". Amnd. Com. ¶ 8. He alleges that Dr. Pederson prescribed penicillin which helped only briefly before the infection returned. Amnd. Com. ¶¶ 8-10. In August of 2001, the defendant Dr. Pederson again "allegedly" "called the plaintiff to his office to examine the plaintiff's mouth to see if the infection returned." Amnd. Com. ¶ 12. Dr. Pederson noted the infection still existed, and prescribed further antibi___s. Amnd. Com. ¶ 12. The plaintiff claims that at this point Dr. Pederson noted the infection at tooth numbers 26 and 27.

The plaintiff then claims that as of August 27, 2001, the infection had cleared, and the defendants Dr. Pederson and Dental Assistant Lucid informed him that "no further treatment was

2

needed." Amnd. Com. ¶ 13. The plaintiff alleges he complained on September 1, 2001 that the infection had returned and he was seen again on September 13, 2001. Amnd. Com. ¶¶ 14-16. The plaintiff claimed that at this time it was teeth numbers 25 and 26 that Dr. Pederson called his attention to, indicating that extraction was required. Amnd. Com. ¶ 16. The plaintiff refused any extraction, stating that he questioned the method of treatment. Amnd. Com. ¶ 16. Further antibiotics were prescribed. Amnd. Com. ¶ 16.

On September 20, 2001, the plaintiff consented to extraction, which he refers to as "surgery". Amnd. Com. ¶ 17. The plaintiff claims: "The defendants (Pederson and Lucid), after stressing that teeth 25 and 25 required extraction, actually extracted teeth 24 and 25!" Amnd. Com. ¶ 18. The defendant Dr. Pederson denied extracting the wrong tooth. Amnd. Com. ¶ 18.

The plaintiff alleges that he filed a grievance regarding the alleged extraction of the wrong tooth. Amnd. Com. ¶ 18. The grievance was responded to, although not to plaintiff's liking, and the plaintiff alleges that he appealed the grievance. Amnd. Com. ¶ 27. The plaintiff does not allege that he appealed the grievance to the third level.

The plaintiff saw Dr. Pederson on October 15, 2001. Amnd. Com. ¶ 20. At this point in time, Dr. Pederson fitted the plaintiff for what the plaintiff calls a "cosmetic denture". Amnd. Com. ¶ 20. Two days later, the plaintiff claims he photocopied 12 pages of his medical file. Amnd. Com. ¶ 22.

Sometime later in November of 2001, the plaintiff alleges that he informed Dr. Pederson that the infection had returned, and he "requested outside treatment and any form of dental accessories." Amnd. Com. ¶ 28. The plaintiff was seen on November 15, 2001, and alleges he

continued to complain of infection. Amnd. Com. ¶ 29. Dr. Pederson again prescribed antibiotics and informed the plaintiff further extraction was necessary. Amnd. Com. ¶ 29.

The plaintiff then alleges that yet another exam was provided by Dr. Pederson on December 7, 2001, during which time the doctor again recommended further extraction and the plaintiff resisted. Amnd. Com. ¶ 31. Dr. Pederson then allegedly became "belligerent" and refused the plaintiff any further treatment. Amnd. Com. ¶ 31. The plaintiff claims he grieved the defendant Dr. Pederson's and Lucid's allegedly unprofessional behavior on December 7, 2001. Amnd. Com. ¶ 32.

On January 1, 2001, the plaintiff again complained to Dr. Pederson about his infected gums, and the plaintiff was seen by Dr. Pederson on January 7, 2001. Amnd. Com. ¶¶ 34-35. On that date, the plaintiff claims that Dr. Pederson denied him any treatment other than extraction, and on the same date, filed a request with the Utilization Review Committee which the plaintiff characterizes as "unfavorable". Amnd. Com. ¶ 36. The request sought treatment outside of the State of Connecticut Department of Correction, which request was denied by that Committee. Amnd. Com. ¶ 36, 37.

Later that month, the plaintiff was transferred to McD-Walker Correctional Institution (hereinafter "McD-Walker"). Amnd. Com. ¶ 38. He claims that shortly thereafter, in February of 2001, he learned that 8 pages of dental records were missing from his medical file. Amnd. Com. ¶ 40. The plaintiff does not have any specifics about who allegedly removed any documents from his medical file, he simply makes broad conclusory allegations that both of the records personnel were so responsible--Taylor, and McGuinness, as well as "Chief Medical Supervisor" Ladden. Amnd. Com. ¶¶ 40, Claim for Relief #2. Also in February of 2002, the

4

plaintiff alleges that the dentist at McD-Walker told the plaintiff he "had a periodontal gum problem and that he needed immediate emergency scaling as a result of being untreated." Amnd. Com. ¶ 42. The new dentist performed the scaling procedure once in February, April, June, and September of 2002. Amnd. Com. ¶¶ 42-44, 48-49.

The plaintiff then alleges that a different dentist, Dr. Marion, told him he need teeth numbers 23 and 26 extracted as well, and he underwent the extractions. Amnd. Com. ¶¶ 54-57. The plaintiff apparently does not quarrel with the extraction of tooth # 23 despite his claim that the extraction of tooth # 24 constituted deliberate indifference.

After the second round of extractions, and while under the care on Dr. Marion, the plaintiff claims he filed a grievance seeking treatment at UCONN for his gums as he feared losing additional teeth. Amnd. Com. ¶ 59. The plaintiff apparently alleges that he appealed this grievance. Amnd. Com. ¶ 60. The Amended Complaint does not indicate what the specific results of the grievance were.

The plaintiff attaches to his Amended Complaint a copy of a Level 2 grievance dated November 10, 2001, in which the plaintiff claims that he wants to be seen by a specialist and disputes the response to a previous grievance which did not validate the extraction of a wrong tooth. He also attaches a more recent Level 1 grievance dated February 7, 2003 filed at McD-Walker, when he was under the care of Dr. Marion, stating that he wants a dental surgeon to operate on his gums. The grievance is denied. The reasons given are: "URC denied your outside oral surgery consult. You are to be managed in DOC. No order or referral for specialist. Dental products were ordered by the dentist only to maintain good oral hygiene." The plaintiff attaches the Level 2 denial of this same grievance.

5

The plaintiff attaches a Level 1 grievance regarding his feeling that the wrong tooth was extracted dated October 22, 2001, which grievance was denied. He attaches another Level 1 grievance claiming a wrong tooth dated October 8, 2001. This grievance form is attached twice.

Other medical records of the plaintiff's are also attached to the Amended Complaint. Specifically, the plaintiff does not claim that he grieved the alleged withholding of medical records or Warden Gomez' alleged retention of the employment of persons he somehow knew were withholding documents from the plaintiff. Nor does he claim that he grieved any failure of Dr. Pederson's to "scale" his teeth.

The grievance from dated October 22, 2001 and responded to on November 9, 2001 is a Level 2 grievance. There is no appeal of the Level 2 grievance that is alleged or attached. The grievance form has designated space for a Level 3 grievance which is not filled in. There are no Level 3 grievances attached to the complaint. . No other grievances are attached to the Amended Complaint or described within the Amended Complaint.

The more recent grievance seeking surgery and dated March 24, 2003 does not allege the extraction of a wrong tooth. *This* grievance indicates that no Level 3 grievance may be filed and that the grievance process is exhausted as to this issue.

II.   ARGUMENT:

A.   **STANDARD OF REVIEW**

When considering a Rule 12(b) motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws inferences from those allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Easton v.*

*Sundram*, 947 F.2d 1011, 1014-15 (2d Cir. 1991), *cert. denied*, 504 U.S. 911 (1992). The function of a motion to dismiss is merely "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Younger v. Chernovetz*, 792 F. Supp. 173, 174 (D. Conn. 1992), *quoting Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. *See Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984); *Frasier v. General Electric Co.*, 930 F.2d 1004, 1007 (2d Cir. 1991).

In *Flaherty v. Coughlin*, 781 F.2d 10, 13 (2d Cir. 1983) the Court held that "[C]ertain claims are so easily made and can precipitate such protracted proceedings with such disruption of governmental functions that . . . detailed fact pleading is required to withstand a motion to dismiss." Complaints containing only conclusory, vague or general allegations of wrongdoing on the part of government officials will be dismissed. *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977). Thus, "a complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Telectronics Proprietary, Ltd. v. Medtronics, Inc.*, 687 F. Supp. 832, 836 (S.D.N.Y. 1988) (citations omitted). A complaint which fails to do so is subject to dismissal for having failed to state a claim upon which relief can be granted.

Pro se submissions are to be construed liberally and held to less stringent standards than pleadings submitted by attorneys. *See, Bergos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *Verone v. Catskill Regional Off-Track Betting Corp.*, 10 F. Supp.2d 372, 375 (S.D.N.Y. 1998). "However, the leniency accorded *pro se* litigants 'is not without limits, and all normal rules of

7

pleading are not absolutely suspended.'" *Gil v. Vogilano*, 131 F. Supp.2d 486, 491 (S.D.N.Y. 2001), *quoting Stinson v. Sheriff's Dep't.*, 499 F. Supp. 259, 262 (S.D.N.Y. 1980).

### B. DELIBERATE INDIFFERENCE----MEDICAL CARE

Under the Eighth Amendment, sentenced inmates are entitled only to "adequate food, clothing, shelter, sanitation, medical care and personal safety." *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds, Bell v. Wolfish*, 441 U.S. 520 (1979); *Lareau v. Mansan*, 651 F.2d 96, 106 (2d Cir. 1981); *see also Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (Supreme Court noted that Eighth Amendment imposes certain duties on prison officials, to "ensure that inmates receive adequate food, clothing, shelter and medical care), *quoting Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984) and *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (Court held that only those conditions depriving inmates of the 'minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.").

In order to state a cause of action for unconstitutional denial of medical care, an inmate must allege "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id.* The conduct complained of must "shock the conscience" or constitute a "barbarous act." *McCloud v. Delaney*, 677 F. Supp. 202, 232 (S.D.N.Y. 1988), *citing U.S. ex rel. Hyde v. McGinnis*, 429 F.2d 864 (2d Cir. 1970). A claim by an inmate against a treating physician is only cognizable if the alleged conduct is "repugnant to the conscience of mankind."

8

*Tomarkin v. Ward*, 534 F. Supp. 1224, 1230 (S.D.N.Y. 1982), *quoting Estelle, supra*, 97 S.Ct. at 292. A defendant must have acted with a "sufficiently culpable state of mind." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows and disregards an excessive risk to inmates health or safety; the official must both be aware of facts from which the inference could be drawn that substantial risk of serious harm exist, and he must also draw the inference.'" *Id., quoting Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

There are both subjective and objective components to the deliberate indifference standard. *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied sub nom Foote v. Hathaway*, 513 U.S. 1154 (1995). The alleged deprivation must be "sufficiently serious" in objective terms. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) The term "serious medical need" contemplates a "condition of urgency, one that may produce death, degeneration, or extreme pain." *Hathaway, supra*, 37 F.3d at 66, *quoting, Nance v. Kelley*, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting.)) Examples of such urgency include the following: broken pins in a hip, *Hathaway v. Coughlin*, 841 F.2d 48 (2d Cir. 1988); discarding an inmate's ear rather than reattaching it, *Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir. 1974); and refusal to follow the surgeon's instructions. *Martinez v. Mancusi*, 443 F.2d 921, 923 (2d Cir. 1970), *cert. denied*, 401 U.S. 983 (1971). Not all medical conditions, however, are considered "serious". *See, e.g., Jones v. Lewis*, 874 F.2d 1125 (6th Cir 1989) (mild concussion and broken jaw); *Hutchinson v. U.S.*, 838 F.2d 390 (9th Cir. 1988) (kidney stone); *Malsh v. Austin*, 901 F. Supp. 757 (S.D.N.Y. 1995) (delay in providing routine dental treatment); *May v. Baldwin*, 895 F. Supp. 1398 (D. Or. 1995) (dry skin); *Glasper v. Wilson*, 550 F. Supp. 12 (W.D.N.Y. 1982) (bowel problems).

Subjectively, the prison official must have acted with "a sufficiently culpable state of mind." *Hathaway v. Coughlin, supra*, 37 F.3d at 66. "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows and disregards an excessive risk to inmate's health or safety; the official must both be aware of fact from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id., quoting Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

In the instant matter, the complaint fails to allege that any of the defendants acted with a sufficiently culpable state of mind in the provision of dental care to the plaintiff. The complaint does *not* allege that Dr. Pederson intentionally extracted the wrong tooth. The plaintiff claims that he is being denied surgery "because he is an inmate", but does not allege that it is Dr. Pederson that has denied him surgery. Rather, he attaches to his complaint a grievance response indicating that surgery is not possible without "URC" approval, that is, Utilization Review Committee approval. The complaint does not allege that any other dental care provider within the Department of Correction either recommends surgery or even that Dr. Pederson failed to recommend surgery, only that surgery has been denied him.

Indeed, the plaintiff's claim of cruel and unusual punishment by virtue of inadequate medical care fails as it does not allege either an objectively serious deprivation or a sufficiently indifferent state of mind---the subjective component. First, even had the wrong tooth been extracted, as the plaintiff alleged, "by mistake", which defendants dispute, this would not rise to the level of an objectively "barbaric" act. The plaintiff does not allege that the wrong tooth was extracted deliberately, for the purpose of causing pain, but, based on the factual allegations of the

10

complaint, negligently. The law is clear that mere medical malpractice is insufficient to present a constitutional violation. *Estelle,* 429 U.S. at 106.

As to the choice of remedy for infected gums, prison authorities are given extensive liberty in the treatment of prisoners. *See Inmate of Allegheny County Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir. 1979); *see also White v. Napoleon,* 897 F.2d 103, 110 (3d Cir. 1990) ("Certainly no claim is stated when a doctor disagrees with the professional judgment of another doctor. There may, for example, be several acceptable ways to treat an illness."). Disagreements over medical judgment do not state Eighth Amendment claims. *U. S. ex rel. Hyde v. McGinnis,* 429 F.2d 864, 867-68 (2d Cir. 1970).

Given the standard for a claim of a violation of the Eighth Amendment by virtue of alleged failure to provide necessary medical care, this claim fails to state a claim upon which relief can be granted, and should be dismissed. Dr. Pederson and his assistant, Ms. Lucid, are the only two defendants the complaint alleges unconstitutionally provided the plaintiff with inadequate medical care, and this insufficient claim should be dismissed as to both of them.

**C.    DELIBERATE INDIFFERENCE-DESTRUCTION OF MEDICAL RECORDS**

A prison officials violates the Eighth Amendment when two conditions are met: the deprivation must be sufficiently serious, and the prison officials must have a sufficiently capable state of mind. *Farmer v. Brennan,* 511 U.S. 825 (1994). Alteration of records does not rise to the level of a cause of action under 42 U.S.C. § 1983, and those claims should be dismissed. *Nigro v. Wilson,* 1997 U.S. App. LEXIS 22927 (9th Cir. 1997), attached; *Althouse v. Hill,* 2003 U.S. Dist. LEXIS 1266 (N.D.Tx. 2003), attached. This action should be dismissed as to the

records clerks in this case, McGuiness and Taylor and as to Rebecca Ladden, alleged to be the "chief medical supervisor employed at Garner Correctional Institution." Amnd. Com. ¶ 2.

### D.  CASE DISMISSABLE FOR FAILURE TO EXHAUST

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The U.S. Supreme Court has ruled that this statute requires exhaustion of administrative remedies before an inmate files a lawsuit with regard to any situation in prison. *Porter v. Nussle,* 534 U.S. 516, 532 (2002). This is true regardless of whether the plaintiff can obtain the specific relief he seeks in the administrative process or not. *Booth v. Churner,* 532 U.S. 731, 741 (2001).

This requirement is not only that an administrative remedy be initiated, but completely exhausted. *See Neal v. Goord,* 267 F.3d 116, 122 (2d Cir. 2001); *Cruz v. Gillis,* 3:01CV667(JBA), Order April 29, 2003, attached; *O'Neil v. Bush,* 3:00CV1202, Ruling and Order March 20, 2003, attached. "Even if the Court liberally construes [the plaintiff's] statement that he filed an initial grievance to apply to these claims . . . [the plaintiff] has not satisfied the exhaustion requirement [if] he did not pursue that grievance to the next level." *Cruz, supra,* p. 3.

Not only must an inmate allege exhaustion, but he must attach grievances demonstrating specific relief sought and demonstrating full exhaustion. *Cruz, supra; Saunders v. Goord,* 2002 U.S. Dist. LEXIS 18189 (S.D.N.Y. September 27, 2002), attached. "Prison officials are entitled to require strict compliance with an existing grievance procedure." *Hemphill v. New York,* 198 F. Supp.2d 546, 549 (S.D.N.Y. 2002). "The available administrative remedies are those set

12

forth in the Department of Correction Administrative Directives". *Cruz, supra,* p. 3. In fact, the State of Connecticut Department of Correction Administrative Directive were specifically considered by the United States Supreme Court in *Porter v. Nussle, supra.* "Department of Correction administrative remedies 9.6 governs the inmate grievance process." *Cruz, supra,* p. 3. Administrative Directive 9.6, attached, specifically provides:

> For the exception of grievances that have been rejected having to do with issues beyond the Department's control such as state and federal laws, court decisions and other agency decisions, a grievance that is denied or rejected may be appealed to the next level as provided for in Sections 16 and 17.

Administrative Directive 9.6 provides for three levels of grievance. A Level 1 grievance is the first step, with an automatic right to file a Level 2 grievance. Level 3 grievances are restricted to grievances which:

> A.  Challenge . . . Department level policy;
> B   Appeal ... for an emergency grievance which cannot be acted upon at a subordinate level;
> C.  Appeals which challenge the integrity of the grievance procedure;
> D.  Appeals for which a timely response to a Level 2 grievance is not received. If a timely response to a Level 2 grievance is not received an inmate may appeal to Level 3 one (1) day after the authorized time limit expires. An appeal to Level 3 must be submitted within five (5) days of receipt of a Level 2 decision.

Administrative Directive 9.6, ¶ 17.

The only claim the plaintiff in this case even alleges that he exhausted is the alleged extraction of the wrong tooth. He does not allege that he filed any grievance with regard to the keeping or alleged destruction of records. He does not allege that he filed any grievance with regard to the defendants Dr. Pederson's alleged "belligerent" behavior or his implicit failure to "scale" the teeth. He does not allege that he grieved Warden Gomez' retention of Taylor, McGuinness and Ladden as employees. Thus, defendants submit that the entire action is subject

to dismissal. When the Supreme Court ruled in *Porter v. Nussle,* 534 U.S. 516, 122 S. Ct. 983, 992 (2002), the Court noted that were exhaustion not required uniformly, bifurcation would result, and is undesirable. *Id.* The case at hand would have to be bifurcated if the plaintiff is allowed to proceed on the claims as to which he has exhausted and not allowed to proceed as to those claims he has not exhausted. A more appropriate interpretation of Section 1997e(a) is to dismiss the entire cause of action until all claims within it have been exhausted. Exhaustion of every claim presented is required in the analogous context of a federal habeas corpus action. Federal statutory law requires merely that, prior to bringing a habeas corpus action in federal court with regard to a state incarceration, "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254. The Supreme Court has ruled that this provision requires that each and every claim for which a petitioner seeks review must have been presented to the state court. *Rose v. Lundy,* 455 U.S. 509, 515-16 (1982). The defendants submit that because only a portion of the claims the plaintiff seeks to raise are alleged to have been exhausted, this Court should dismiss the entire action.

Although the Second Circuit has not ruled on whether an entire case is dismissable if not all claims within it are alleged to be exhausted, numerous federal courts interpret the exhaustion requirement as extending to every claim in a single complaint lest the entire complaint be subject to dismissal. *See, e.g., Kemp v. Jones,* 2002 U.S. App. LEXIS 16058 (6th Cir. 2002), attached; *Gentry v. Maxwell,* 2002 U.S. App. LEXIS 9637 (6th Cir. 2002) (The plaintiff "failed to demonstrate that he had exhausted his administrative remedies *as to each of the claims raised in his complaint against each of the defendants prior to filing suit in federal court."* (emphasis added)), attached; *Martin v. Butler,* 2001 U.S. App. LEXIS 11326 (10th Cir. 2001), attached;

14

*Julien-Bey v. Crowley,* 2001 WL 1555950 at *2 (6th Cir. 2001) (dismissing "mixed" complaint; rejecting argument that "the exhaustion of at least one claim is sufficient to prevent dismissal"); *Graves v. Norris,* 218 F.3d 884, 885 (8th Cir. 2000) (per curiam); *Taylor v. Clarke,* 2002 U.S. Dist. LEXIS 6368 (N.D. Cal. 2002) ("An action containing both exhausted and unexhausted claims at the time of filing should be dismissed without prejudice."); *Rivera v. Whitman,* 161 F. Supp.2d 337, 339-43 (D.N.J. 2001) (plain language of § 1997e(a), as well as legislative intent and policy interests behind it, compel a "total exhaustion" rule.); *Saunders v. Goord,* 2002 U.S. Dist. LEXIS 18189 (S.D.N.Y. 2002), attached; *See also, e.g., Lira v. Director of Corr. Of State of California,* 2002 U.S. Dist. LEXIS 9559, 2002 WL 1751341 at *3.

Even if this Court is not willing to dismiss the entire action, there is no question that those claims other than the claim regarding the allegedly negligent extraction of the wrong tooth in this case are not alleged to have been exhausted, and should be dismissed. *See, e.g., Vines v. Lojkuc,* 3:01cv361(WWE)(HBF), Memorandum of Decision, August 30, 2002, attached; *Espinal v. Coughlin,* 2002 U.S. Dist. LEXIS 20 (S.D.N.Y. 2002); *Jenkins v. Toombs,* 32 F. Supp.2d 955, 958-59 (W.D. Mich. 1999). Thus, as the plaintiff makes no pretense at having exhausted his administrative remedies with regard to anything other than his medical claims against the defendants Dr. Pederson and Lucid, those other claims, at a minimum, should be dismissed for failure to exhaust. The same is true of the plaintiff's claims against all of the defendants in the case insofar as he alleges that they all have conspired to falsify records pertaining to him.

### F.  PERSONAL INVOLVEMENT

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected,' the complainant to a deprivation of rights secured by the Constitution and laws." *Rizzo v. Goode* 423 U.S. 362, 370-71 (1976), *quoting* 42 U.S.C. §1983. Where damages are sought in a §1983 action, the defendant(s) must be responsible for the alleged constitutional deprivation. Thus, an allegation of personal involvement is a necessary prerequisite for a valid cause of action under §1983. *See, e.g., Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987); *Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1973), *rev'd on other grounds, Graham v. Connor*, 490 U.S. 386 (1989); *McKinnon v. Patterson*, 568 F.2d 930 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978). Consistent with the requirement that personal involvement is required for a claim under § 1983, the Supreme Court has ruled that the general doctrine of *respondeat superior* does not suffice to state a claim under § 1983. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 692-95 (1978). Thus, in order to state a cognizable claim, the plaintiff must allege, and ultimately prove, "personal involvement of [the defendants] sufficient to support their liability for wrongful acts," not merely their "linkage in the chain of command." *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).

Supervisory responsibility alone is not enough to confer exposure to liability. *Williams v. Smith*, 781 F.2d 313, 323 (2d Cir. 1986); *Williams v. Vincent*, 508 F.2d 541, 546 (2d Cir. 1974). A supervisory official may only be liable if it is alleged that he or she learned of the violation and failed to remedy the wrong, if he created or permitted the policy or wisdom under which the unconstitutional practices occurred, or if he was grossly negligent in managing subordinates who caused the violation. *Williams v. Smith*, 781 F.2d at 323-24; *Meriwether v. Coughlin*, 879 F.2d

16

1037 (2d Cir. 1989). "A plaintiff must thus allege a tangible connection between the acts of the defendants and the injuries suffered." *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir. 1986). An official cannot be held liable merely because he or she occupies a high position in the prison hierarchy. *Colon v. Coughlin,* 58 F.3d 865, 874 (2d Cir. 1995).

In this case, the plaintiff does not allege that Warden Gomez or either of the records clerks, McGuiness or Taylor, or Ladden, were personally involved in any way in the extraction of the wrong tooth. Thus, to the extent this complaint can be considered to have alleged a complaint for inadequate medical care, it should be dismissed as to any defendants other than Dr. Pederson and Ms. Lucid.

### G.    THIS COURT LACKS PERSONAL JURISDICTION OVER THE DEFENDANT LADDEN

In the absence of proper service of the summons and complaint, the District Court does not have personal jurisdiction over a particular defendant. *American Telephone & Telegraph Co. v. Merry,* 592 F.2d 118, 126 (2d Cir. 1979). Even a claim, which does not exist here, that a defendant had actual notice of a lawsuit is not sufficient to bar a motion to dismiss for lack of personal jurisdiction. *Martin v. New York State Department of Mental Hygiene,* 588 F.2d 371, 373 (2d Cir. 1978). The plaintiff has not served the defendant Ladden personally or by first class mail directed to her attention.

Because the plaintiff has failed to comply with the mandatory requirements of Fed. Rule Civ. Pro. 4(c)(2)(c) for effecting service, this action in its entirety should be dismissed as to the above-named defendants.

**H.     QUALIFIED IMMUNITY**

The doctrine of qualified immunity protects government officials from civil suits arising from the performance of their discretionary functions when that performance "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *Lennon v. Miller*, 66 F.3d 416, 420-21 (2d Cir. 1995); *Oliveira v. Mayer,* 23 F.3d 642, 649 (2d Cir. 1994), *cert. denied,* 513 U.S. 1076 (1995). This doctrine evolved as an accommodation between the need to provide private redress when government officials abuse their position of public trust and the need to shield officials who responsibly perform their duties from the costs of defending an action. *Anderson v. Creighton,* 483 U.S. 635, 638-39 (1987); *Harlow v. Fitzgerald,* 457 U.S. at 814. Assertion of the privilege should be upheld unless the "contours of the right" were "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 438 U.S. at 640. The doctrine of qualified immunity for government officials serves not only as a defense from liability, but also to dismiss an action when the plaintiff has failed to claim the violation of clearly established law or to allege the clear violation of a constitutional right. *Behrens v. Pelletier,* 516 U.S. 299, 306-307 (1996) ; *Jermosen v. Smith,* 945 F.2d 547, 553 (2d Cir. 1991), *cert. denied,* 503 U.S. 962 (1992).

In this case, all of the defendants are entitled to qualified immunity, and this action should be dismissed in its entirety on the basis of qualified immunity, if not for the reasons set forth above.

DEFENDANTS,
Warden Gomez, et al.

RICHARD BLUMENTHAL
ATTORNEY GENERAL


BY: _____
Lynn D. Wittenbrink
Assistant Attorney General
Federal Bar No. ct08575
110 Sherman Street
Hartford, CT 06105
Telephone No. (860) 808-5450
Fax No. (860) 808-5591
E-Mail: lynn.wittenbrink@po.state.ct.us


**CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed first class postage prepaid this 5th day of November, 2003 to:

Audley K. Watson, Inmate No. 185524
MacDougall-Walker Correctional Institution
1153 East Street South
Suffield, CT 06080

_____
Lynn D. Wittenbrink
Assistant Attorney General

19