<u>UNITED STATES DISTRICT COURT</u>

<u>DISTRICT OF CONNECTICUT</u>

| | | |
|---|---|---|
| Audley K. Watson | : | PRISONER |
| Plaintiff, | : | Case No. 3:02CV600(PCD)(JGM) |
| v. | : | |
| | : | |
| Mr. Gomez et. al. | : | |
| Defendants, | : | **November 14, 2003** |

<u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S</u>

<u>REPLY TO DEFENDANTS MOTION TO DISMISS</u>

Pursuant to Federal Rules of Civil Procedure 8(a), the plaintiff in the above captioned matter respectfully moves to proceed in this matter in it's entirety for the following reasons. First, to the extent this action seeks declarartory and injunctive relief and damages from the defendants in their individual capacity. Second, this action clearly states a claim upon which relief can be granted as it proves permanent loss, injury, and sufficient deliberate indifference on the part of the defendants with regard to his serious dental needs, and requests this court to grant relief in the form of surgery, properly fitting dentures, dental accessories, and compensation. This action clearly states a claim upon which relief can be granted insofar as it will prove the tampering/withholding of the plaintiff's medical/dental documents as a retaliatory move for the plaintiff filing grievances against the defendants and to conceal the violation of the plaintiff's Constitutional Rights, and the blatant deliberate indifference which can also be proven by a staff attorney employed with the Inmates Legal Assistance Program. This action should also

survive the defendants motion to dismiss pursuant to the prisons litigation
reform act for sufficiently exhausting his administrative remedies to the
claims, not once, but twice, which the plaintiff has documents to prove.
Also, this action states the personal involvement on the part of all the
defendants, including Rebecca Ladden, Ms. Mcginness, and Ms. Taylor. This
action is not subject to dismissal as to perfection of service against
defendant Ladden, as the plaintiff filed an additional letter to the court
in reference to perfection of service on all the defendants which court
documents will prove.

## I. FACTS

The plaintiff is seeking declarartory and injunctive relief and also monetary
relief in the form of compensatory and punitive damages from the defendants
in their individual capacity. The plaintiff is suing the defendants in their
official and individual capacity. The plaintiff brings this action against
the following defendants : Mr. Gomez - Warden of Garner C.I., Dr. Dennis R.
Pederson - Dentist at Garner C.I., Carol Lucid - Dental assistant at Garner
C.I., Rebecca Ladden - Chief Medical supervisor at Garner C.I., Ms. Mcginness
- Records clerk at Garner C.I., Ms.Taylor - Records clerk at Garner C.I.

The plaintiff, Audley Kimathi Watson, while incarcerated at garner c.i. in the
month of july 2001 had a discomforting infection in his gums, which caused
pain and distress. Defendant Dr. Dennis R. Pederson's own dental documents
will prove that he took the easiest route in treating the plaintiff by not
thoroughly examining the plaintiff's infection, and prescribed pennicillin
VK500 for the infection and motrins for the pain. Within days (10) of
completing the medication (7/20/01), the plaintiff returned to defendant

2

pederson's office where he communicated to the plaintiff that his teeth and

gums were "O.K.". Within a couple of weeks, the plaintiff contacted defendant

pederson again complaining that the initial infection had returned.

With the knowledge that he could personally review his medical/dental file,

on or about 8/01, the plaintiff wrote a request to the medical records dept.

to review his medical/dental file. This request went unanswered. Within a few

weeks (8/16/01) defendant pederson seen the plaintiff, and again took the

easiest route in treating the plaintiff despite recording "gingival tissue

being swollen behind teeth #26,27 and puss exudate", and prescribed Cephalexin

(Keflex) 500mg, and communicated to the plaintiff that the medication would

permanently clear up the infection.

Again, within days (8/27/01), defendant pederson examined the plaintiff, and

along with his assistant, defendant Carol Lucid, communicated to the plaintiff

that his gums were fine and "no further treatment was needed." After several

days, the plaintiff contacted defendant pederson again, and complained of the

initial infection returning yet again. The plaintiff, in 9/01 made a second

attempt and contacted, by request, the institutions medical records dept. and

requested to review his medical/dental file. Again, his request went unanswered.

On 9/18/01, defendant pederson along with defendant Lucid communicated to the

plaintiff that extracting teeth 25 and 26 will permanently eleviate the

plaintiff's returning infection and ultimately stop the problem. The plaintiff,

confused about the medical advice of defendant pederson and lucid, and

communicated to them that he did not understand how extracting teeth 25 and 26

will eleviate the infection, declined the extraction of his teeth, and

pleaded for external attention concerning his gums. Defendant pederson

3

prescribed Cephalexin (Keflex) again. After approx. a week (9/20/01), and after suffering for about three (3) months of pain and discomfort, the plaintiff decided to place his trust in the medical advice of defendants pederson and lucid and reluctantly agreed to allow them to perform surgery in his mouth and extract teeth 25 and 26, with the complete understanding from both defendants that this extraction will without question, solve the infection from returning.

On the same date (9/20/01), after approx an hour after the extraction, the plaintiff changed the bloody cotton in his mouth, following the defendants orders, and was horrified to realize that the defendants, after stressing that teeth 25 and 26 required extraction, actually extracted teeth 24 and 25! Not even once did the plaintiff ever complain of tooth 24, and nowhere in defendant pederson's records, prior to extraction did he ever record tooth 24 being associated or included in the infected area. The plaintiff immediately expressed his disgust to the block officer (E-Block) who called defendant pederson, then related the message the defendant pederson stated that he did in fact extract the correct teeth and the plaintiff was mistaken, and to write a request if he wanted to be seen again.

On 10/8/01, after receiving a grievance, the plaintiff filed the grievance (Inmate Grievance form A, Level 1) and complained that the defendant (pederson) extracted the wrong tooth. On 10/15/01, the plaintiff filed a third request to review his medical/dental file. On or about 10/17/01 the plaintiff was called down to the institutions medical office and was allowed, in the presence of staff, to review and photocopy twelve (12) pages of his medical/ dental file. On 10/22/01, the plaintiff received a response from the grievance

4

he filed on 10/8/01, and appealed that decision stating the level 1 reviewer only addressed one issue. On 11/8/01, the plaintiff wrote his initial request to the Inmates Legal Assistance Program (I.L.A.P.) requesting kindly if they could obtain a copy of his complete medical/dental file from garner and forward him a copy. On 11/9/01, the plaintiff received a response from the grievance that he appealed on 10/22/01, and despite the grievance coordinator trying to hinder any further grievances by <u>not</u> checking <u>any</u> of the appropriate boxes (which is a violation of due process), and told verbally that he could not proceed, the plaintiff tried to appeal that decision.

On 11/30/01, the plaintiff received correspondence from staff attorney, Ellen Downing, at the I.L.A.P. with the proper authorization to fill out and return for her to obtain a copy of his medical/dental file. On 12/7/01, after taking the prescribed medication, and unwillingly allowed the defendants (pederson and lucid) to extract his bottom front teeth (25&26), in which they extracted the wrong tooth (24), the plaintiff again complained to the defendant (pederson) that the infection returned again in the same area. The plaintiff pleaded with the defendants (pederson and lucid) for any form of relief, whether it be in the form of medicated mouthwash, medicated toothpaste, or any dental accessories (which could be prescribed) to help with the evident swelling, blood and pain, and requested outside treatment to avoid any further extractions of his teeth. Defendant pederson then became extremely belligerent and irate and blatantly told the plaintiff either extract more teeth or leave his office!

After being denied any form of treatment, and was left to suffer and deal with the pain and discomfort, the plaintiff filed another grievance. On 1/7/02, after complaining to the defendants (pederson and lucid) again of his infection and pain, and requesting to be sent to UCONN again, the defendant (pederson) filed an extremely unfavorable URC report, which resulted in UCONN denying

5

treatment. (1/17/02) The unfavorable report was clearly in retaliation to the grievances that the plaintiff filed a few weeks prior against the defendants. This can be proven because, defendant pederson's initial reports were, "the plaintiff is O.K." and "no further treatment is needed", but when the plaintiff requested outside treatment, defendant pederson's report states "the plaintiff has advanced periodontal disease!" On 1/23/02, the plaintiff was transferred from Garner C.I. to Macdougal C.I.

On 2/4/02, Managing attorney, Jane Starkowski, from the I.L.A.P. forwarded the plaintiff a copy of his medical/dental file which defendants Rebecca Ladden, Ms. Mcginness, and/or Ms. Taylor authorized or sent themselves to the I.L.A.P. in which the plaintiff immediately noticed at least eight (8) pages missing of dental records. The plaintiff wrote attorney starkowski and informed her of the missing pages.

After contacting the dentist at macdougal, the dentist, DR. George P. Haas, called the plaintiff to his office on 2/22/02, and recorded the plaintiff's gums were left in a condition that immediate emergency scaling must be done. Four (4) days later, on 2/26/02, Dr. Haas performed an "emergency deep scaling." On 5/8/02, managing attorney jane starkowski of the I.L.A.P. contacted the plaintiff and requested that he forward the pages that were allegedly missing from his file that the defendants (Ladden, Mcginness, and Taylor) sent to her. The plaintiff then forwarded several pages in his possession that were not included in the file to her. On 8/8/02, attorney Jessica J. York from the I.L.A.P. contacted the plaintiff by mail and confirmed that the pages that were forwarded by the plaintiff were not included in the medical/dental file sent to the I.L.A.P.

On 1/16/03, the dentist, Dr. Irene Marion, communicated to the plaintiff

6

that teeth 23 and **26** may require extraction from his gums going so long
untreated. Her recorded dental documents will prove that defendant pederson
and defendant lucid did in fact extract teeth 24 and 25, and not 25 and 26
as they state, and neglected to treat the plaintiff's minor periodontal
problems which resulted in further more serious infections and complications
and loss of teeth.

On 2/10/03, the plaintiff filed a grievance requesting to be sent to UCONN to
treat his periodontal problem. On 3/13/03, the plaintiff received the response
from his grievance he filed on 2/10/03, it was denied. The plaintiff appealed
that decision. On 3/27/03, the plaintiff received the decision from the
appealed grievance filed on 3/13/03, which it states "the disposition of his
grievance is COMPROMISED - some parts of your grievance is (are) justified."
The level 2 reviewer checked the "this grievance may not be appealed to a level
3." The last grievance and second request to UCONN for periodontal treatment was
denied because of the unfavorable URC report defendant pederson filed on 1/7/02.
(The grievance states the second request to UCONN is denied because the first
request was denied.) Thus hindering any future applications because of the
actions of defendants pederson and lucid. As of date, the plaintiff has not
received the proper treatment his gums require which clearly violates his 5th,
8th and 14th amendment rights in the U.S. Constitution.

II. **STANDARD OF REVIEW**

**ARGUMENT**

When considering a Rule 12(b) motion to dismiss, the court accepts as true all
factual allegations in the complaint and draws inferences from those allegations
in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S.
232, 236 (1974); Easton v. Sundram, 947 F.2d 1011, 1014-15 (2nd Cir. 1991), cert.

denied, 504 U.S. 911 (1992). A Pro Se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." ID., at 520-521, 92 S.CT. at 596, quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) Prisoners can establish an eighth amendment violation with respect to medical care if they can prove there has been deliberate indifference to their serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 50 L.Ed. 2d 251, 97 S.Ct. 285 (1976); Toussaint v. McCarthy, 801 F.2d 1080, 1112 (9th Cir. 1986), cert. denied, 481 U.S. 1069, 107 S.Ct. 2462, 95 L. Ed.2d 871 (1987).

"Dental care is one of the most important medical needs of inmates." Ramos v. Lamm, 639 F.2d 559, 576 (10th Cir. 1980), cert. denied, 450 U.S. 1041, 68 L. Ed.2d 239, 101 S.Ct. 1759 (1981). Accordingly, the eighth amendment requires that prisoners be provided with a system of ready access to adequate dental care. Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).

Prison officials are deliberately indifferent to a prisoner's medical needs when they "deny, delay, or intentionally interfere with medical treatment. Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1984)

Infliction of unnecessary suffering on prisoner by failure to treat his medical needs is inconsistent with contemporary standards of decency and violates the Eighth Amendment. U.S.C.A.Const. Amend. 8. Title 42 U.S.C. 1983 provides: "Every person who, under color of any statue, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and Laws, shall be liable to the party injured in an action at

law, suit in equity, or other proper proceeding for redress."

Those elementary principles establish the government's obligation to provide medical care for whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical "torture or a lingering death," In re Kemmler, supra, the evils of most immediate concern to the drafters of the Amendment. In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose. Cf. Gregg v. Georgia, supra, at 173, 96 S.Ct. at 2924-25 (joint opinion).

In Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652, The Haines test is not whether the facts alleged in the complaint would entitle the plaintiff to relief. Rather, it is whether the court can say with assurance on the basis of the complaint that, Beyond any doubt, NO set of facts could be proved that would entitle the plaintiff to relief. The reasons for the Haines test are manifest. A Pro Se complaint provides an unsatisfactory foundation for deciding the merits of important questions because typically it is inartfully drawn, unclear, and equivocal, and because thorough pleadings, affidavits, and possibly an evidentiary hearing will usually bring out facts which simplify or make unnecessary the decision of questions presented by the naked complaint.

The proper standard in a Section 1983 medical care was announced by the Supreme Court in Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). It is simply whether a jury may reasonably conclude that a defendant physician has shown a "deliberate indifference to serious medical needs." Id. at 104, 97 S.Ct. at 291. If so, such a finding constitutes "the unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Id.; see also

9

Massey v. Hutto, 545 F.2d 45 (8th Cir. 1976); Policy of deferring to judgement of prison officials in matters of prison discipline and security does not usually apply in context of medical care to same degree as in other context. Wellman v. Faulkner 715 F.2d 269 (1983). As a pratical matter, "deliberate indifference" can be evidenced by "repeated examples of negligent acts which disclose a pattern of conduct by the prison medical staff." (Wellman) The personal responsibility requirement is satisfied "if the official acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent." Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir. 1982). When a state imposes imprisonment as a punishment for crime, it accepts the obligation to provide persons in it's custody with a medical care system that meets minimal standards of adequacy. This obligation is enforceable in federal court, since inadequate medical care for prisoners violates the eighth amendment. Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976).

A complaint need not set down in detail all the particularities of a plaintiff's claim against a defendant; all a complaint need do is afford the defendant a fair notice of what the plaintiff's claim is and the grounds upon which it rests. Fed.Rules Civ.Proc. rules 8(a)(2), 12(b)(6), (e),28 U.S. C.A. A motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Fed.Rules Civ.Proc. rules 8(a)(2), 12(b)(6), (e), 28 U.S.C.A. A complaint alleging that prison authority wrongfully denied medical

10

treatment to a prisoner need not allege that prison officials consciously
sought to inflict pain on a prisoner by withholding the treatment in order to
state a cause of action under Civil Rights Act. 42 U.S.C.A. 1983.
A prisoner states a proper cause of action under Civil Rights Act when he
alleges that prison authorities have denied reasonable requests for medical
treatment in the face of an obvious need for such attention where the inmate
is thereby exposed to undue suffering or threat of tangible residual injury.
42 U.S.C.A. 1983. Whether a prisoner has suffered unduly by the failure of
prison officials to provide him with medical treatment is to be determined
in view of the totality of the circumstances, and in making this determination
the trier of fact should consider the practicalities of the situation,
including the extent of the injury, the realistic possibilities of treatment,
and the possible consequences to the prisoner in failing to provide immediate
medical attention. 42 U.S.C.A. 1983. In Stilner v. Rhay, 371 F.2d 420, 421 n.
3 (9th Cir. 1967), the stilner court observed that the allegations in the
other cases shared four common elements : 1. an acute physical condition,
2. the urgent need for medical care, 3. the failure or refusal to provide it,
and 4. tangible residual injury. 371 F.2d at 421 n.3.
The logic of these pronouncements is not difficult to perceive. An individual
incarcerated, whether for a term of life for the commission of some heinous
crime, or merely for the night to "dry out" in the local drunk tank, becomes
both vulnerable and dependent upon the state to provide certain simple and
basic needs. Examples are food, shelter, and sanitation. Facilities may be
primitive but they must be adequate. Medical care is another such need. Denial
of necessary medical attention may well result in disabilities beyond that
contemplated by the incarceration itself. The result may be crippling injury

11

as alleged here, or...the very deprivation of life itself, since, restrained

by the authority of the state, the individual cannot himself seek medical aid

or provide the other necessities for sustaining life and health. "Westlake

v. Lucas 537 F.2d 857 (1976). We believe that a prisoner states a proper cause

of action when he alleges that prison authorities have denied reasonable

requests for medical treatment in the face of an obvious need for such attention

where the inmate is thereby exposed to undue suffering or threat of tangible

residual injury. See Ingram v. Montgomery County Prison Board, 369 F.Supp. 873

874 (W.D.Pa.1974). In our view, Appellant has adequately stated a cause of

action for deprivation of needed medical care and the district court was in

error in dismissing the case at the pleading stage. Appellant has alleged

that he was forced to endure a period of intense discomfort because his pleas

for medical assistance went unheeded by his jailers. He should have the

opportunity to prove the truth of his allegations at an evidentiary hearing.

Appellees should be directed to respond to Appellant's complaint and, should

the trier of fact conclude that Appellant's accusations are true, the

District Court is empowered to grant complete relief. Westlake v. Lucas, 537

F.2d 857 (1976).

B **DELIBERATE INDIFFERENCE**

"Prisoners can establish an eighth amendment violation with respect to medical

care if they can prove there has been deliberate indifference to their

serious medical needs. Estelle v. Gamble, 429." " Dental care is one of the

most important medical needs of inmates." Ramos v. Lamm, 639 F.2d 559, 576

(10th Cir. 1980).  In this complaint the plaintiff does allege that the

defendants (pederson and lucid) acted with a sufficiently culpable state of

12

mind in the provisions of his serious dental needs. The amended complaint
goes on to state that defendants (pederson and lucid) blindly, recklessly,
and maliciously extracted the plaintiff's wrong tooth with no regard to his
physical pain and suffering. The plaintiff goes on to state that he is being
denied outside surgery because of the retaliatory actions of defendant
pederson and lucid in their filing an unfavorable URC report. This complaint
goes on to explaint that due to that unfavorable report, any and all future
URC applications will ultimately be denied, because the initial report was
denied. This complaint further goes on to explain that two (2) reputable
dentists' (Haas and Marion), within the Dept. of Corrections recommended and
performed immediate emergency surgery on the plaintiff due to the condition
the defendants left the plaintiff in. The plaintiff alleges that the conduct
of the defendants not fully examining the plaintiff's medical condition yet
recklessly and negligently performing irreversable surgery and blindly
extracting possibly healthy teeth is savage and barbaric, whichcaused
permanent loss. Reviewing the totality of the actions of defendants (pederson
and lucid) and the fact that the plaintiff stated a claim for which relief
can be granted, this complaint should not be dismissed as to both of them.

## C DELIBERATE INDIFFERENCE / TAMPERING/WITHHOLDING MED.DENT. DOCUMENTS

Regarding this issue, the plaintiff first quotes from "Wellman v. Faulkner,
715 F.2d 269 (1983)." "This argument is similar to one that carried the day
for the plaintiff in Ybarra v. Spangard, 25 Cal.2d 486, 154 P.2d 687 (1944).
Mr. Ybarra suffered an injury of unknown origin to his shoulder between the
time he was ansesthetized for an appendectomy and the time he awoke in the
recovery room. Ybarra argued that res ipsa loquitur should be applied against

all of the doctors and hospital employees connected with the operation, though
presumably not all of them were responsible. The defendants argued that they
were entitled to a dismissal because the plaintiff had not shown which of the
defendants was responsible for his injury. The California Supreme Court held
that Ybarra could proceed to trial because under the circumstances it was
appropriate to place the burden of initial explaination for the injury on the
defendants.

The plaintiff goes on to prove, with confirmation from staff attorney York
at the I.L.A.P. that the defendants (Ladden, Mcginness, and Taylor) withheld
several documents in an attempt to conceal the violation of the plaintiff's
constitutional rights, and to conceal the blatant disregard for the plaintiff's
health and well being, displayed by the actions of defendant pederson and lucid.
This does rise to the level of cause of action under 42 U.S.C. 1983.

**D ADMINISTRATIVE REMEDIES**

Administrative directive 9.6 provides the standards for the grievance procedure.
In the plaintiff's initial complaint, he enclosed three (3) grievances. The
first two (2) grievances were surrounding the issue of the defendants extracting
the wrong tooth. Accordingly, as Ad. Dir. 9.6, level 3 grievances are restricted
to grievances which : A,B,C, and D, and as such, the plaintiff has sufficiently
exhausted all admisistrative remedies. But ultimately, the plaintiff did file
a level 3 grievance, despite the grievance coodernator failing to check any of
the appropriate boxes thus trying to hinder any further appeals. "Prison
officials are entitled to require strict compliance with an existing grievance
procedure." Hemphill v. New York. The plaintiff also included one (1) grievance
stating the malicious treatment he was receiving at the hands of the defendants

14