UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

----------------------------------------------X
:
AUDLEY K. WATSON                        :
:        PRISONER
v.                                                    :        3:02 CV 600(JGM)
:
:
WARDEN GOMEZ ET AL.                 :        AUGUST 10, 2004
:
----------------------------------------------X

FILED
Aug 10   3:55 PM '04

## RULING ON MOTION TO DISMISS

Plaintiff Audley K. Watson, an inmate confined at the MacDougall Correctional

Institution in Suffield, Connecticut, filed this action pro se and in forma pauperis pursuant

to 28 U.S.C. § 1915. (Dkt. #1).  On April 5, 2002, plaintiff filed his Complaint, alleging that

defendants Warden Gomez, Rebecca Ladden, Dr. Dennis R. Pederson, Carol Lucid, Ms.

McGuinness, and Ms. Taylor improperly extracted one of his teeth, failed to provide proper

medical treatment for his periodontal disease, and tried to withhold documents concerning

his medical treatment.  (Dkt. #2, at 3-4).[1]  On June 17, 2003, the parties consented to trial

before this United States Magistrate Judge.  (Dkt. #25). On August 20, 2003, plaintiff filed

his Amended Complaint (Dkt. #32).[2]  Pending before the Court is defendants' Motion to

---

[1]Defendants' first Motion to Dismiss was denied without prejudice on August 11, 2003.
(Dkt. #31; see also Dkts. ##19-27).

[2]Attached are the following sixteen exhibits, as listed by plaintiff: copy of correspondence,
dated September 4, 2002 (Exh. 1); copy of Ruling on Pending Motions, filed November 21, 2002
(Exh. 2); copy of seven U.S. Marshals Service Forms, dated September 16, 2002 (Exh. 3); copy of
Inmate Grievance Form B, Levels 2 and 3, dated November 10, 2001 (Exh. 4); copy of Inmate
Grievance Form A, Level 1, dated February 7, 2003 (Exh. 5); copy of Inmate Grievance Form B,
Levels 2 and 3, dated March 18, 2003 (Exh. 6); copy of correspondence from Inmates' Legal
Assistance Program ["ILAP"], dated August 8, 2002, to which was attached a copy of Inmate
Grievance Form B, Levels 2 and 3, dated October 22, 2001 and a copy of Inmate Grievance Form
A, Level 1, dated October 8, 2001 (Exh. 7);  a copy of correspondence from ILAP, dated
November 8, 2002, to which was attached another copy of Inmate Grievance Form A, Level 1,
date October 8, 2001, another copy of Inmate Grievance Form B, Levels 2 and 3, dated October
22, 2001, and a copy of Dental Records, dated July 10, 2001 to August 27, 2001 (Exh. 8); copy of

AO 72A
(Rev. 8/82)

Dismiss and brief in support, filed on November 10, 2003. (Dkts. ##38-39).[3] Plaintiff filed his brief in opposition nine days later (Dkt. #40).[4]

For the reasons stated below, the defendants' Motion to Dismiss (Dkt. #39) is granted.

## I. STANDARD OF REVIEW

When considering a Rule 12(b) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Thomas v. City of N.Y., 143 F.3d 31, 37 (2d Cir. 1998). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. See Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000); Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998)(citation omitted). The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims. Branham v. Meachum, 77 F.3d 626, 628 (2d Cir. 1996)(citation omitted). In its review of a motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transport

---

correspondence from ILAP, dated February 4, 2002 (Exh. 9); copy of correspondence from ILAP to UConn Health Center, dated December 31, 2001 (Exh. 10); copy of correspondence from ILAP, dated December 31, 2001 (Exh. 11); copy of correspondence from ILAP, dated November 30, 2001 (Exh. 12); copy of Dental Records, dated July 10, 2001 to January 2003 ["Pederson Dental Records"] and copy of Dental Procedures, dated February 22, 2002 to February 28, 2002 ["Haas/Marion Dental Records"] (Exh. 13); copy of Utilization Review Request, dated January 7, 2002 (Exh. 14); copy of Utilization Review Report, dated January 17, 2002 (Exh. 15); and copy of Authorization for Release of Information, dated October 15, 2001 (Exh. 16).

[3]Copies of several court decisions are attached to defendants' brief, as well as a copy of the Connecticut Department of Corrections Inmate Administrative Remedies.

[4]The same sixteen exhibits are attached as were attached to the complaint. See note 1 supra.

Local 504, 992 F.2d 12, 15 (2d Cir. 1993). In reviewing this motion, the court is mindful that the Second Circuit "ordinarily require[s] the district courts to give substantial leeway to pro se litigants." Gomes v. AVCO Corp., 964 F.2d 1330, 1335 (2d Cir. 1992)(citations omitted).

## II. FACTUAL BACKGROUND

The Court accepts as true the following facts, taken from plaintiff's Amended Complaint. (Dkt. #32). In July 2001, plaintiff was incarcerated at Garner Correctional Institution. (Dkt. #32, ¶ 7). At that time, he contacted the dentist at Garner, Dr. Dennis R. Pedersen, complaining of problems with his gums. (Id.). Dr. Pedersen examined plaintiff on July 10, 2001, and informed him that the gums around teeth 25 and 26 were abscessed. (Id. ¶ 8). Dr. Pedersen prescribed an antibiotic to stop the infection. (Id.). On July 20, 2001, Dr. Pedersen examined plaintiff's teeth and indicated that the abscesses had healed. (Id. ¶ 9). At plaintiff's request, Dr. Pedersen examined plaintiff on August 16, 2001, and noted that the infection had returned.    (Id. ¶¶ 10-12). Dr. Pedersen again prescribed antibiotics to cure the infection. (Id.). At plaintiff's next dental appointment on August 27, 2001, plaintiff's gums were no longer infected. (Id. ¶ 13).

At plaintiff's request the next month, on September 13, 2001, Dr. Pedersen examined plaintiff and concluded that extracting teeth 25 and 26 would permanently clear up the infection and pain in plaintiff's gums. (Id. ¶¶ 14-16). Plaintiff refused to have the teeth extracted and instead Dr. Pedersen prescribed antibiotics to cure the infection. (Id. ¶ 16).

One week later, on September 20, 2001, Dr. Pedersen examined plaintiff as a result of plaintiff's continued complaints of pain and an infection in his gums. (Id. ¶ 17). Dr. Pedersen again recommended that teeth 25 and 26 be extracted. (Id.). Plaintiff agreed to the extractions and Dr. Pedersen and Nurse Lucid extracted two of plaintiff's teeth that same

3

day. (Id.). Plaintiff alleges that Dr. Pedersen extracted tooth 24 instead of tooth 26. (Id. ¶ 18). Dr. Pedersen told plaintiff that he was mistaken and that tooth 24 had not been pulled. (Id.).

On October 15, 2001, Dr. Pedersen examined plaintiff, assured him that the right teeth had been pulled and took an impression of plaintiff's teeth so that he could be fitted with a denture. (Id. ¶ 20). On October 24, 2001, Dr. Pedersen gave plaintiff his denture. (Id. ¶ 24). Dr. Pedersen adjusted the denture on November 1, 2001. (Id. ¶ 25). In November 2001, plaintiff informed Dr. Pedersen that the infection had returned to the area where the teeth had been extracted. (Id. ¶ 28).

On November 15, 2001, Dr. Pedersen examined plaintiff, prescribed antibiotics for the infection and informed plaintiff that additional teeth might have to be extracted. (Id. ¶ 29). Plaintiff instead requested outside treatment and "dental accessories," such as medicated mouthwash and toothpaste; Dr. Pedersen denied plaintiff's request. (Id.).

On December 7, 2001, Dr. Pedersen and Nurse Lucid informed plaintiff that more teeth would have to be extracted, as the infection had returned. (Id. ¶ 31). When the plaintiff questioned this course of action, Dr. Pedersen became irate and told plaintiff he could either have additional teeth extracted or leave his office. (Id.). Both Dr. Pedersen and Nurse Lucid refused to provide plaintiff with any mouthwash, toothpaste or dental accessories to alleviate the pain and infection in his gums. (Id.).

At plaintiff's request the next month, on January 7, 2002, Dr. Pedersen again informed plaintiff that he must have additional teeth extracted to clear up the infection. (Id. ¶¶ 34-35). He denied plaintiff's request for outside treatment and other dental supplies. (Id. ¶ 35). Later that day, Dr. Pedersen filed a request with the Utilization Review Committee ["URC"] for periodontal surgery for plaintiff. (Id. ¶ 36). In his request to the URC, Dr.

4

Pedersen noted that plaintiff had refused extractions of additional teeth and demanded treatment by a periodontist. (Id.)  On January 17, 2002, the URC denied the request and noted that plaintiff's dental condition could be managed by dentists within the Department of Correction. (Id. ¶ 37).

On January 23, 2002, plaintiff was transferred to MacDougall Correctional Institution. (Id. ¶ 38).  On February 4, 2002, plaintiff learned from an attorney at the Inmates' Legal Assistance Program that eight pages of plaintiff' dental records were missing. (Id. ¶ 40). Plaintiff alleges that defendants Rebecca Ladden, Ms. McGuinness and Ms. Taylor were responsible for the missing records. (Id.).

While at MacDougall CI, a dentist treated plaintiff's gum condition by scaling plaintiff's infected gums on February 26, 2002, followed by additional scaling on April 1, 2002 and September 10, 2002. (Id. ¶¶ 43-44 & 52). On January 16, 2003, Dr. Irene Marion, a dentist at MacDougall CI, examined plaintiff's teeth and informed him that teeth 23 and 26 might require extraction and that she could add teeth to plaintiff's denture. (Id. ¶ 54).  One week later, on January 23, 2003, this dentist took an impression of plaintiff's lower teeth and the next day, plaintiff agreed to the extractions. (Id. ¶¶ 55-56).

On January 24, 2003, Dr. Marion extracted teeth 23 and 26.[5] (Id. ¶ 56). Dr. Marion provided plaintiff with a new partial denture to which teeth 23 and 26 were added. (Id.). Plaintiff claims to still suffer pain from the periodontal disease. (Id. ¶ 62).  Plaintiff seeks declaratory and injunctive relief as well as damages. (Id. at 14-16).  Plaintiff sues defendants in their individual capacities only. (Id. at 2-3).

---

[5]As stated earlier, Dr. Pederson insisted to plaintiff that tooth 26 was extracted during the September 20, 2001 procedure. (Id. ¶ 18).

5

## III. DISCUSSION

Defendants raise six grounds in support of their motion to dismiss: (1) plaintiff failed to allege facts to state a claim of deliberate indifference to medical needs (id. at 8-11); (2) alteration of medical records is not a cause of action under 42 U.S.C. § 1983 (id. at 11-12); (3) plaintiff failed to exhaust his administrative remedies before commencing this action (Dkt. #38, at 12-15); (4) plaintiff failed to allege the personal involvement of defendants McGuinness, Taylor, Ladden or Gomez in the alleged failure to provide adequate dental treatment to the plaintiff (id. at 16-17); (5) the Court lacks personal jurisdiction over defendant Ladden (id. at 17); and (6) defendants are entitled to qualified immunity (id. at 18). This ruling will address these issues in a different order.

### A. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Defendants contend that plaintiff has only exhausted his administrative remedies with regard to one claim in the Amended Complaint, the improper tooth extraction claim. (Dkt. #38, at 13).   In opposition, plaintiff claims that he exhausted his administrative remedies as to all claims. (Dkt. #41, at 14-16).

The Prison Litigation Reform Act ["PLRA"], 42 U.S.C. § 1997e(a), provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has held that this provision requires an inmate to exhaust administrative remedies before filing any type of action in federal court, see Porter v. Nussle, 534 U.S. 516, 532 (2002), regardless of whether the inmate may obtain the specific relief he desires through the administrative process. See Booth v. Churner, 532 U.S. 731, 741 (2001). This requirement of complete exhaustion of administrative remedies must be satisfied before a federal action

6

is commenced. See Neal v. Goord, 267 F.3d 116, 122 (2d Cir. 2001)(holding that an inmate may not avoid the requirements of 42 U.S.C. § 1997e(a) by exhausting administrative remedies after filing a civil rights action in federal court).

The Court takes judicial notice of the administrative remedies for the Connecticut Department of Correction which are set forth in Administrative Directive 9.6, entitled Inmate Grievances. Section 6.A. of the Administrative Directive that was in effect from August 16, 1999 through January 29, 2002[6] provides that the following matters are grievable:

1. The interpretation and application of policies, rules and procedures of the unit, division and Department.
2. The existence or substance of policies, rules and procedure of the unit, division and Department....
3. Individual employee and inmate actions including any denial of access of inmates to the Inmate Grievance Procedure other than as provided herein.
4. Formal or informal reprisal for use of or participation in the Inmate Grievance Procedure.
5. Any other matter relating to access to privileges, programs and services, conditions of care or supervision and living unit conditions within the authority of the Department of Correction, to include rights under the Americans with Disabilities Act, except as noted herein.
6. Property loss or damage.

Defendants do not contest that plaintiff exhausted his administrative remedies as to his claim regarding the extraction of the wrong tooth (see Dkt. #38, at 13 & 15); rather, defendants contend that plaintiff has failed to exhaust his administrative remedies with regard to his remaining claims: defendants' failure to "scale" his teeth and defendants' alleged destruction of medical records. (Id.).

Plaintiff claims that defendants have failed to provide him with proper treatment for

---

[6]Dkt. #38, Exh. 6 contains the regulations in effect from February 26, 2003 through March 5, 2003. Because the allegations in the Amended Complaint concern a time period from July 2001 to January 2002, the Court considers the State of Connecticut Department of Correction Administrative Directives in effect during that time. (See Administrative Directive 9.6, effective August 16, 1999 through January 29, 2002). A copy of the 1999 Administrative Directives has been filed as Dkt. #47.

7

his periodontal disease. (Dkt. #32, ¶¶12-14).    Dr. Pedersen and Nurse Lucid treated

plaintiff with antibiotics, extracted two of plaintiff's teeth (id. at ¶ 17) and recommended that

more teeth be extracted. (Id. ¶ 31).  In the Administrative Directives in effect at the time of

plaintiff's claims, disagreement over medical treatment is excluded from the institutional

grievance process.[7]  See Administrative Directive 9.6, § 6.B.6 (Aug. 16, 1999)(providing that

"Health Services diagnosis or treatment" is not grievable).   Because plaintiff's claim

concerning improper dental care is one of disagreement with the course of treatment, he

was not required to exhaust that claim prior to filing this lawsuit.

Plaintiff also alleges that defendants Ladden, McGuinness and Taylor tampered with

and withheld several dental records from his medical file from an attorney at Inmates' Legal

Assistance. (Dkt. #32, at 9 ¶ 40 & at 13 ¶ 2).  Plaintiff contends that Warden Gomez failed

to suspend or fire defendants Pedersen, Lucid, Ladden, McGuinness and Taylor after he

became aware of their negligent treatment of him.  (Id. at 13-14, ¶ 3).  These allegations

must be pursued according to the institutional grievance process before they can be

litigated. (See Dkt. #47, ¶ 6.A.).  Plaintiff does not allege in his Amended Complaint that he

exhausted the claims against defendants Gomez, Ladden, McGuinness or Taylor. Although

plaintiff attaches copies of grievances and Level Two and Level Three appeal forms, those

forms all relate to his claims against defendants Pedersen and Lucid.  (See Dkt. #32, Exhs.

4-8).   Thus, plaintiff has failed to attach any copies of grievance or appeal forms to his

Amended Complaint demonstrating that he has exhausted the claims against defendants

Gomez, Ladden, McGuinness or Taylor.

In his brief in opposition, plaintiff asserts that he did not attempt to exhaust his

---

[7]The Court notes that the inmate grievance procedures set forth in Administrative
Directive 9.6 have since been revised and pursuant to the revisions to Directive 9.6, medical
treatment and diagnoses are now grievable.

AO 72A
(Rev. 8/82)

administrative remedies as to his claim against defendants Ladden, McGuinness and Taylor for records tampering because he was at a different facility when he learned of the alleged tampering. (Dkt. #41, at 16). There is nothing in Administrative Directive 9.6 which prohibits an inmate from filing a grievance concerning an incident that occurred at another facility.

Furthermore, futility does not excuse the exhaustion requirement. In <u>Booth v. Churner</u>, 532 U.S. 731, 735 n.2 (2001), the Supreme Court noted that the inmate had been transferred but assumed only that his claims for injunctive relief were rendered moot by the transfer. The damages claims remained viable and subject to the exhaustion requirement. One district court has relied on <u>Booth</u> in determining that the fact that the plaintiff had been transferred from New Hampshire to Massachusetts did not relieve him of the obligation to comply with the exhaustion requirement set forth in 42 U.S.C. § 1997e(a). <u>See LaFauci v. New Hampshire Dep't of Corrections</u>, No. Civ. 99-253-M, 2001 WL 716123, at *2 n.1 (D.N.H. June 5, 2001). Accordingly, the claims that defendants Ladden, McGuinness and Taylor tampered with or withheld several pages of dental records and the claim that Warden Gomez failed to suspend or terminate the employment of defendants Pedersen, Lucid, Ladden, McGuinness and Taylor are dismissed for failure to exhaust administrative remedies.[8] As there are no other claims against defendants Ladden, McGuinness, Gomez and Taylor, the case is dismissed as to these defendants.[9]

---

[8]Defendants contend that the Court should dismiss this action in its entirety because the plaintiff has failed to exhaust his administrative remedies as to all claims or, in the alternative, the Court should bifurcate the case if plaintiff is allowed to proceed on the claims as to which he has exhausted and not allowed to proceed as to the claims not exhausted. (Dkt. #38, at 14). As defendants concede, however, the Second Circuit has not ruled that an entire case may be dismissed if the plaintiff has failed to exhaust all claims in the complaint (<u>id.</u>), and this Court declines to apply the total exhaustion principle in this matter.

[9]Because the Court has dismissed all claims against defendants Gomez, Ladden, McGuinness and Taylor for failure to exhaust administrative remedies, the Court need not reach the personal involvement and jurisdiction arguments addressed to these defendants.

9

## B. FAILURE TO STATE A CLAIM

Defendants Pedersen and Lucid move to dismiss the claims against them because plaintiff has failed to allege facts to support a claim of deliberate indifference to serious medical needs. (Dkt. #38, at 8-11).   Plaintiff contends that the Dr. Pedersen's and Nurse Lucid's extraction of the wrong tooth, failure to provide him with alternative methods of treating his periodontal disease such as medicated mouthwash and toothpaste or scaling, failure to refer him for periodontal surgery sooner and failure to actively recommend periodontal surgery at a later stage of his treatment constitute deliberate indifference to his serious dental condition. (See Dkt. #41, at 12-13).  Plaintiff characterizes their actions as "savage and barbaric." (Id. at 13).

The Eighth Amendment protects inmates from deliberate indifference by prison officials to their serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). To prevail on such a claim, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106.  A prisoner must show intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel.  See id. at 104-05.  Mere negligence will not support a section 1983 claim; the conduct complained of must "shock the conscience" or constitute a "barbarous act." McCloud v. Delaney, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (citing United States ex rel. Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970)). A treating physician will be liable under the Eighth Amendment only if his conduct is "repugnant to the conscience of mankind." Tomarkin v. Ward, 534 F. Supp. 1224, 1230 (S.D.N.Y. 1982)(quoting Estelle, 429 U.S. at 105-06).

The civil rights statute was not meant to redress medical malpractice claims that can be adequately resolved under state tort law. Tomarkin, 534 F. Supp. at 1230-31.  Thus, a

10

claim of misdiagnosis, faulty judgment, or malpractice without more to indicate deliberate indifference, is not cognizable under section 1983. See McCabe v. Nassau County Medical Center, 453 F.2d 698, 704 (2d Cir. 1971); Tomarkin, 534 F. Supp. at 1230. In addition, mere disagreement with prison officials about what constitutes appropriate medical care does not state a claim cognizable under the Eighth Amendment. See Hyde v. McGinnis, 429 F.2d 864, 868 (2d Cir. 1970); Corby v. Conboy, 457 F.2d 251, 254 (2d Cir. 1972); Ross v. Kelly, 784 F. Supp. 35, 44 (W.D.N.Y.), aff'd, 970 F.2d 896 (2d Cir.), cert. denied, 506 U.S. 1040 (1992).

There are both subjective and objective components to the deliberate indifference standard. See Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom. Foote v. Hathaway, 513 U.S. 1154 (1995). The alleged deprivation must be "sufficiently serious" in objective terms. Wilson v. Seiter, 501 U.S. 294, 298 (1991). See also Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990)(Pratt, J., dissenting)("'serious medical need' requirement contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain"). The Second Circuit has identified several factors that are highly relevant to the inquiry into the seriousness of a medical condition: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)(citation & internal quotations omitted). In addition, where the denial of treatment causes plaintiff to suffer a permanent loss or life-long handicap, the medical need is considered serious. See Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000).

In addition to demonstrating a serious medical need to satisfy the objective

11

component of the deliberate indifference standard, an inmate also must present evidence

that, subjectively, the charged prison official acted with "a sufficiently culpable state of mind."

Hathaway, 37 F.3d at 66 (citation omitted). "[A] prison official does not act in a deliberately

indifferent manner unless that official 'knows of and disregards an excessive risk to inmate

health or safety; the official must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"

Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

Defendants do not contest that the pain plaintiff has experienced due to his

periodontal disease constitutes a serious dental condition. Defendants argue, however, that

they were not deliberately indifferent to the plaintiff's condition.   (Dkt. #38, at 8-11).

Specifically, defendants argue that plaintiff's claim that defendants Pedersen and Lucid

extracted the wrong tooth is a claim of negligence and not deliberate indifference. (Id. at

10-11). Although the record demonstrates that plaintiff suffered from the extraction of the

wrong tooth as tooth number 26 could not be extracted by both Dr. Pedersen and Dr.

Marion, the Court agrees that plaintiff's claim is one of negligence and not deliberate

indifference. (See Pedersen Dental Records, 9/20/01 entry; Haas/Marion Dental Records,

entry 1/24/03). Plaintiff does not allege that the defendants Pedersen and Lucid extracted

the wrong tooth intentionally or with the intent to cause him pain.  Plaintiff alleges that on

September 13, 2001, Dr. Pederson recommended that two of his teeth be extracted in an

effort to alleviate the pain and infection in his gums surrounding those teeth. (Dkt. #32, ¶

16; Pedersen Dental Records, 9/13/01 entry).   Plaintiff subsequently agreed to the

extractions and on September 20, 2001, Dr. Pedersen extracted two of the plaintiff's teeth.

(Dkt. #32, ¶ 17; Pedersen Dental Records, 9/20/01 entry).  Plaintiff asserts that shortly after

the procedure, he realized that Dr. Pedersen had extracted tooth 24 instead of tooth 26.

12

(Dkt. #32, ¶ 18).  There are no allegations that Dr. Pedersen deliberately extracted the wrong tooth; in fact, Dr. Pedersen believed he had extracted the right tooth when the plaintiff confronted him about it after the procedure and as further evidence that Dr. Pedersen believed he extracted the right tooth, Dr. Pedersen later noted that plaintiff had a "periodontal ab[s]cess" in tooth number 24 (the tooth allegedly already extracted).  (Dkt. #32, ¶ 20; Pedersen Dental Records, 11/15/01 entry).  The claims that Dr. Pedersen and Nurse Lucid mistakenly or negligently extracted the wrong tooth fail to state a claim of deliberate indifference to serious medical needs.  See Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation.")(citations omitted).

Plaintiff also contends that Dr. Pedersen and Nurse Lucid failed to request periodontal surgery at any time earlier than January 2002, failed to provide him with other methods to treat the symptoms of his periodontal disease, and attempted to eliminate any possibility that the URC might grant the January 2002 request for periodontal surgery by characterizing plaintiff as uncooperative and demanding in retaliation for plaintiff's filing a grievance regarding the extraction of the wrong tooth.  (Dkt. #32, at 12-13, ¶ 1).  If Dr. Pedersen's and Nurse Lucid's choice of treatment for the plaintiff's gum disease was motivated by reasons other than their medical judgment or opinion, the disagreement as to treatment might state a claim of deliberate indifference to serious medical needs.  See Chance, 143 F.3d at 704 (holding that proof that defendants had recommended a form of medical treatment because of monetary incentives rather than on the basis of their medical views would demonstrate that "the defendants had a culpable state of mind and that their choice of treatment was intentionally wrong and did not derive from sound medical

13

judgment."); <u>Archer v. Dutcher</u>, 733 F.2d 14, 17 (2d Cir. 1984) (reversing district court's ruling granting summary judgment for prison officials "where there is an underlying dispute as to whether legitimate medical claims were deliberately disregarded as punishment ... or for other invalid reasons."); <u>Williams v. Vincent</u>, 508 F.2d 541, 544 (2d Cir. 1974)(holding that doctor's choosing the "easier and less efficacious course of treatment" of throwing away the prisoner's ear and stitching the stump may be attributable to "deliberate indifference . . . rather than an exercise of professional judgment"); <u>Starbeck v. Linn County Jail</u>, 871 F. Supp. 1129, 1146 (N.D. Iowa 1994)(denying defendants' motion for summary judgment because material issue of fact existed as to what motivated the defendants' refusal to permit surgery on the plaintiff). The medical records submitted by plaintiff show that Dr. Pedersen and Nurse Lucid provided consistent medical advice that the pain plaintiff was experiencing would be alleviated by extractions, that there "is no periodontist available while [plaintiff] is a prisoner to treat [his] gum disease," and that "antibiotics are only a temporary solution." (Pedersen Dental Records 7/20/01, 9/13/01, 9/20/01 & 11/15/01 entries).    Defendants provided this advice from July 2001 through January 2002, immediately before plaintiff was transferred to the care of Dr. Haas and Dr. Marion, and the advice remained consistent from both before and after plaintiff filed his grievance. (<u>Compare</u> Pedersen Dental Records <u>with</u> Haas/Marion Dental Records).

Accordingly, defendants' Motion to Dismiss is <u>granted</u> as to this and all claims.[10]

### IV. CONCLUSION

For the reasons stated above, defendants' Motion to Dismiss (Dkt. #39) is <u>granted</u> as to all claims against defendants Gomez, Ladden, McGuinness and Taylor and as to all

---

[10]In light of the conclusions reached in Sections III.A & B., there is no need to address the issue of qualified immunity.

14

other claims of deliberate indifference by defendants Pedersen and Lucid.

The parties have consented to the exercise of jurisdiction by a magistrate judge and the case was transferred to the undersigned for all purposes including the entry of judgment on June 17, 2003.  (See Dkt. #25.)  Accordingly, this is not a recommended ruling.

Dated at New Haven, Connecticut, this 10th day of August, 2004.


_____
Joan Glazer Margolis
United States Magistrate Judge

15